UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**EVELYN BRITT, as Personal Representative**
**of the Estate of Donald Britt,**

                **Plaintiff,**

**-vs-**                                                    Case No. 6:06-cv-599-Orl-19DAB

**PRISON HEALTH SERVICES, INC., and**
**J.R. PARKER, as Sheriff of Brevard County,**
**Florida,**

                **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1. Defendant Sheriff's Motion For Summary Judgment And Memorandum Of Law In Support (Doc. No. 48, filed April 2, 2007);

2. Defendant Parker's Notice Of Filing Depositions In Support Of Motion For Summary Judgment (Doc. No. 49, filed April 2, 2007);

3. Defendant Parker's Supplement To Motion For Summary Judgment (Doc. No. 51, filed April 2, 2007);

4. Defendant Prison Health Services, Inc.'s Motion For Summary Judgment And Memorandum Of Law In Support (Doc. No. 54, filed April 9, 2007); and

5. Notice Of Filing of Defendant Prison Health Services, Inc. (Doc. No. 63, filed June 13, 2007).

Plaintiff Evelyn Britt, the Personal Representative of the Estate of Donald Britt, failed to file with the Court any opposition to the Motions for Summary Judgment now pending, although counsel

for Plaintiff received notice of such motions via electronic mail. The Court previously warned Plaintiff that failure to oppose any Motion for Summary Judgment may result in entry of judgment for the movant without further proceedings, and it repeated this warning in an Order placing each Motion for Summary Judgment under advisement. (Doc. Nos. 23, 52, 55). Furthermore, counsel for Plaintiff confirmed at the pretrial conference that he opted not to file an opposition to the pending Motions for Summary Judgment. (*See* Doc. No. 65). For this reason alone, judgment may be entered in this case for Defendants and against Plaintiff. *See Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984).  Nevertheless, the Court considers the merits of the arguments raised by Defendants..

## Background of the Case

During the incident giving rise to this lawsuit, Donald Britt, who was approximately seventy years old, was a pretrial detainee held in the Brevard County Detention Center. Mr. Britt was sleeping in his cell on April 10, 2004, when he was struck in the head by a prison inmate. He sought the assistance of the guards and was referred to the prison medical staff, who were employees of Defendant Prison Health Services, Inc. Mr. Britt was treated for a bloody nose, and according to his medical records, he was also given a common analgesic to treat an existing condition. In the weeks following this incident when Mr. Britt complained of ongoing headaches, he was examined by nurses and doctors employed by Prison Health Services. Mr. Britt's requests for medical services show that his headaches continued throughout the month of April and that he believed such headaches were linked to the April 10, 2004 incident. Prison Health Services treated Mr. Britt's headaches with analgesics and a "headache protocol", which involved resting on a stretcher while a compress was placed over the patient's eyes. His medical records indicate that Mr. Britt felt "much better" after this treatment. In addition, Mr. Britt was treated by a doctor for his cardiovascular

condition which involved the close medical management of a blood thinning medicine during this time.

In late April 2004, the state court adjudicated Mr. Britt incompetent to proceed to trial and committed him in a secure health care facility in Melbourne, Florida. Mr. Britt was transferred to that facility on May 3, 2004. Although his intake paperwork was not remarkable, the staff transferred Mr. Britt to a local hospital once they learned of the April 10, 2004 incident and his ongoing headaches. While at the hospital, Mr. Bitt was diagnosed with a subdural hematoma, a type of serious head injury. His doctors successfully treated this injury with, among other things, a surgical craniotomy.

After surgery, Mr. Britt returned to the Melbourne facility, but he soon ran into trouble. Consequently, he was returned to prison in July 2004 and committed thereafter to the care of the Department of Children and Families. Mr. Britt died while in the Department's custody on May 22, 2006, after he had filed this lawsuit, of causes unrelated to the April 10, 2004 incident and his head injury.[1]

In the instant lawsuit, Plaintiff Evelyn Britt seeks damages for the inadequate care Mr. Britt received while a detainee at the Brevard County Detention Center. In Count I of her three-Count Complaint, Plaintiff alleges that Sheriff Parker and Prison Health Services violated Mr. Britt's rights under the U.S. Constitution by failing to diagnosis and treat his head injury. She avers, in Count II, that Sheriff Parker failed to properly provide for the separation of special risk detainees; failed to properly secure such detainees; and failed to provide appropriate and timely medical treatment of

---

[1] The Court subsequently substituted Evelyn Britt, the Personal Representative of Mr. Britt's Estate, as Plaintiff.

detainees. Lastly, in Count III, Plaintiff seeks damages from Prison Health Services for failing to properly diagnosis Mr. Britt's head injury or failing to refer Mr. Britt to a medical doctor. Defendants request summary judgment on each of these claims.

## Applicable Standards

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden of proof, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. *Id.*

**Discussion**

Initially, Sheriff Parker and Prison Health Services contend that they are entitled to summary judgment on Count I of Plaintiff's Complaint which is brought under Title 42 U.S.C. § 1983. Next, Sheriff Parker contends that there is no evidence to support Plaintiff's negligence claims in Count II. Lastly, Prison Health Services argues that it is entitled to a summary judgment in its favor on Plaintiff's medial malpractice claim found in Count III of the Complaint.

*Section 1983 Claim*

To prevail on a claim under Section 1983, a plaintiff must demonstrate both (1) that the defendant deprived him of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law.[2] *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). In this case, Plaintiff contends that Defendants' failure to provide Mr. Britt with medical care violated his rights under the Due Process Clause of the Fourteenth Amendment. *See Hamm v. Dekalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985) ("Conditions of confinement imposed prior to conviction are limited . . . by the due process clause of the fourteenth amendment.").[3]

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). An inadvertent or negligent failure to

---

[2] The second requirement is not at issue in the instant case because each Defendant was either (1) acting under the color of state law in his position as a prison official or (2) performing a function which has traditionally been a function of the state. *See, e.g.*, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *Unterberg v. Correctional Med. Sys., Inc.*, 799 F. Supp. 490, 494 (E.D. Pa. 1992).

[3] The Court of Appeals for the Eleventh Circuit applies the same minimal standards for violations of pretrial detainees' rights under the Due Process clause as it does for violations of a convicted prisoners' rights under the Eight Amendment. *Hamm*, 774 F.2d at 1574.

provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105-06 (internal quotations omitted). Instead, prison officials must be deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104.

"To show that a prison official acted with deliberate indifference to a prisoner's serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *E.g.*, *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The first inquiry requires evidence of an objectively serious medical need. *Id.* As for the second inquiry, a plaintiff must demonstrate that the prison official acted with an attitude of "deliberate indifference" to that serious medical need. *Id.* Deliberate indifference has, in turn, three separate components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and (3)] conduct that is more than mere negligence." *McElligott*, 182 F.3d at 1255.

Plaintiff's Section 1983 claim falters because there is no evidence that either Sheriff Parker or Prison Health Services were subjectively aware of the severity of Mr. Britt's head injury, which was occult.[4] Mr. Britt's medical records, including documentation of his complaints and requests for medical care, have been offered by Defendants. These records show that medical doctors and nurses attended to Mr. Britt's ailments when he so requested. Such records also indicate that the treatment protocols successfully ameliorated Mr. Britt's headaches in particular. Furthermore, as the medical

---

[4] Although the Court describes Mr. Britt's condition as occult, there is a genuine issue of material fact concerning the proximate cause of his head injury. Dr. Joel Kahn, the expert witness of Prison Health Services, indicated that Mr. Britt's medical condition could have been the result of the trauma he received on April 10, 2004 or it could have been spontaneously caused by his blood thinning medication. In this Order, the Court assumes that Mr. Britt's injury was caused by the trauma he received on April 10, 2004, which is the inference most favorable to Plaintiff. *Anderson*, 477 U.S. at 255.

records and expert testimony of record demonstrate, a medical doctor appropriately managed Mr. Britt's cardiovascular condition and medication during this time.

This is not a case where the prison officials knew of a serious medical need and refused to act. *See, e.g.*, *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997). Although Mr. Britt had complained about headaches during this time, there is no other evidence that either Sheriff Parker or Prison Health Services were subjectively aware of the severity of Mr. Britt's condition. Mr. Britt received medical care when he requested it. The expert testimony of Defendants shows that the treatment Mr. Britt received was appropriate and that no additional treatments or diagnostic testing were indicated by his complaints. Plaintiff offers no evidence or testimony to dispute these opinions. Thus, in sum, the record as a whole points to a case of missed, but not deliberately neglected, opportunity.[5]

Defendants are entitled to summary judgment on Count I of Plaintiff's Complaint.

### *Negligence Claims*

Plaintiff brings three separate negligence claims against Sheriff Parker in Count II of her Complaint. She alleges that the Sheriff Parker failed to properly classify Mr. Britt and thereby failed to segregate him from the general population of the prison. She also avers that Sheriff Parker failed to protect Mr. Britt while he was held at the Brevard County Detention Center. Lastly, Plaintiff contends that the Sheriff failed to provide Mr. Britt with reasonable medical care during this time.

---

[5] Because the Court concludes that there has been no Constitutional violation in this case, Plaintiff's remaining Section 1983 claim must also necessarily fail. *See McElligott*, 182 F.3d at 1259 ("In reviewing the district court's grant of summary judgment, we 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' ").

*Failure to Classify*. As to this claim, Sheriff Parker argues that he is protected by Florida's sovereign immunity doctrine because his decision to classify Mr. Britt was a discretionary, as opposed to an operational, function of his office. Under Florida law, a discretionary function is one in which the challenged governmental act involved an exercise of executive or legislative power such that the Court would inappropriately entangle itself in fundamental questions of policy and planning were it to entertain the plaintiff's tort claim. *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999). An operational function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented. *Id.* Discretionary functions are protected by sovereign immunity while operational functions are not. *Id.*

Florida courts apply this general framework to the classification of prisoners. On the one hand, the government actor is performing a discretionary function where a plaintiff's claim hinges upon allegations of negligence at the planning level, such as in the classification of prisoners or in the policies adopted for their supervision. *See, e.g.*, *Davis v. Dep't of Corr.*, 460 So. 2d 452, 453 (Fla. Dist. Ct. App. 1984). On the other hand, where the government actor has failed to follow an established classification policy, then that governmental actor has performed an operational function. *See, e.g.*, *Dunagan v. Seely*, 533 So. 2d 867, 868 (Fla. Dist. Ct. App. 1988).

The Complaint in the instant case is ambiguous as to whether Plaintiff's claims are based upon improper policies for inmate classification or whether they are based upon Sheriff Parker's implementation of such policies. To the extent Plaintiff's claims are based on the Sheriff's development of polices for inmate classification, they are barred by Florida's sovereign immunity

doctrine.[6] *Davis*, 460 So. 2d at 453. Plaintiff's negligence claim is not barred, however, to the extent she is alleging that Sheriff Parker improperly classified Mr. Britt under the existing policies.

In this regard, Dr. Joseph Smyth, the former Medical Director for the Volusia County Department of Corrections, opined that the Sheriff's personnel correctly categorized Mr. Britt according to the inmate classification policies in place at the time of his confinement. In particular, Dr. Smyth noted that Mr. Britt's intake records correctly identified his medical conditions, prescriptions, psychiatric history, and age. Sheriff Parker's other classification expert, Mr. David Parrish, testified that Sheriff Parker's officers employed the established classification scheme to Mr. Britt both during his initial in processing and periodically during his detention. Because Plaintiff has not presented any evidence controverting this expert testimony, the Court finds that there are no genuine issues of material fact as to this negligence claim.

***Failure to Protect***. Next, Sheriff Parker contends that Plaintiff's failure to protect claim cannot be maintained on the instant record. (Doc. No. 48, pp. 12-13). Under Florida law, there is no duty to protect a detainee until an officer becomes aware of a specific danger to that detainee or otherwise has reason to anticipate such danger. *See e.g.*, *Harris v. Monds*, 696 So. 2d 446, 447 n.1 (Fla. Dist. Ct. App. 1997).[7] There is no evidence in the instant case that Sheriff Parker or any of the

---

[6] Accordingly, if Plaintiff is complaining that Sheriff Parker's policies are improper because they do not provide for the separate housing of elderly inmates or those taking certain medications, her claim is barred.

[7] The Court frames this as an issue of duty, but one could alternatively frame it as an issue of proximate cause. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992) (discussing how foreseeability creates an admixture of duty and proximate cause under Florida negligence law). In either case, the record does not support a necessary element of Plaintiff's negligence claim.

Detention Center's personnel knew of any threats or other danger to Mr. Britt. Thus, absent such evidence, Sheriff Parker did not have a duty to protect Mr. Britt under Florida law.

*Failure to Provide Medical Care*. Sheriff Parker also contests Plaintiff's claim that he failed to provide Mr. Britt adequate medical care. Correction officers in Florida have a duty to use reasonable care to insure the safety of detainees. *Ferguson v. Perry*, 593 So. 2d 273, 277-78 (Fla. Dist. Ct. App. 1992). Once an officer knows or has reason to know a detainee is injured, the officer must render medical treatment until further assistance can be obtained from medical personnel. *Id.* The Restatement (Second) of Torts further defines the outer boundaries of an officer's duty of care as follows:

> e. The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. . . . He is not required to take any action where the risk does not appear to be an unreasonable one, as where a passenger appears to be merely carsick, and likely to recover shortly without aid.
>
> f. The defendant is not required to take any action until he knows or has reason to know that the plaintiff is endangered, or is ill or injured. He is not required to take any action beyond that which is reasonable under the circumstances. <u>In the case of an ill or injured person, he will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained</u> . . . .

*Id.* at 277 n.5 (quoting section 314A of the Restatement (Second) of Torts) (emphasis added).

In the instant case, the record shows that Sheriff Parker's officers directed Mr. Britt to medical personnel soon after the April 10, 2004 incident, and that Mr. Britt continued to receive medical care after that incident whenever he so requested. Moreover, Mr. Britt's extensive medical records show that his cardiovascular condition was monitored during this time by medial personnel. The evidence does not show, on the other hand, that Sheriff Parker or his officers knew of the extent

of Mr. Britt's head injury beyond his complaints of headaches, the symptoms of which were successfully treated by the medical staff. On this record, the Court concludes that there is no material issue of fact concerning the officer's discharge of their duty of care.

In view of the above, Sheriff Parker is entitled to summary judgment on Count II of the Complaint.

### *Medical Malpractice Claim*

Prison Health Services contends that Plaintiff's medical malpractice claim[8] is barred by Florida's Medical Negligence Act, which requires a complex pre-suit procedure of investigation, notice, and arbitration for medical malpractice claims. (Doc. No. 54, pp. 14-17). The pre-suit requirements are conditions precedent to maintaining an claim for medical malpractice under Florida law, and such claims are barred until the claimant satisfies those pre-suit requirements. *See Hosp. Corp. of Am. v. Lindburg*, 571 So. 2d 446, 449 (Fla. 1990).

During the discovery period of this lawsuit, Prison Health Services sought an admission from Plaintiff that she did not comply with the pre-suit requirements of the Florida Medical Negligence Act. Plaintiff did not respond to this Request for Admission within the time allotted by Federal Rule of Civil Procedure 36. Thus, because Plaintiff has not sought to withdraw or amend this admission, Prison Health Services has conclusively established the fact that Plaintiff has not satisfied the pre-suit investigation and notice requirements of Section 766.106, Florida Statutes. *See* FED. R. CIV. P. 36(b).

---

[8] Based upon the allegations of the Complaint, the Court concludes that Plaintiff is bringing a medical malpractice claim under state law against Prison Health Services. *See e.g.*, *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 947-49 (Fla. 1994) (discussing how to classify medical malpractice claims under the Florida statutory scheme).

Accordingly, Prison Health Services is entitled to summary judgment on Count III of the Complaint.[9]

### Conclusion

Based on the foregoing, the Court **GRANTS** the Motion for Summary Judgment of Defendant J.R. Parker (Doc. No. 48) and **GRANTS** the Motion for Summary Judgment of Defendant Prison Health Services, Inc. (Doc. No. 54).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July 22, 2007.

*/s/ Patricia C. Fawsett*
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

---

[9] The statute of limitations has run on Plaintiff's medical malpractice claim. *See* FLA. STAT. § 11(4)(b). Consequently, although she could have corrected this defect at any time prior to trial, she cannot do so now. *See Kukral v. Mekras*, 672 So. 2d 278, 283 (Fla. 1996).